UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ASHLEY M. o/b/o A.M.B.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

20-CV-420-LJV
DECISION & ORDER

---

On April 7, 2020, the plaintiff, Ashley M. ("Ashley"), brought this action under the Social Security Act ("the Act") on behalf of A.M.B., a minor child under 18 years of age. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that A.M.B. was not disabled. Docket Item 1. On January 4, 2021, Ashley moved for judgment on the pleadings, Docket Item 12; on March 4, 2021, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 13; and on March 25, 2021, Ashley replied, Docket Item 14.

For the reasons stated below, this Court grants Ashley's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and will refer only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

Ashley argues that the ALJ erred in several ways in concluding that A.M.B. did not have an "extreme" limitation in one domain or "marked" limitations in at least two

domains.³  Docket Item 12-1 at 2.  First, she argues that the ALJ erred by "rely[ing] on a stale medical opinion [prepared by B. Stouter, M.D.] and fail[ing] to close evidentiary gaps and further develop the record."  *Id.*  Second, she argues that the ALJ improperly understood and analyzed several domains and that several domain findings therefore were unsupported by substantial evidence.  *Id.*  Finally, she argues that the ALJ improperly evaluated her credibility.  *Id.*  This Court agrees that the ALJ erred by relying on a stale medical opinion and, because that error was to A.M.B.'s prejudice, remands the matter to the Commissioner.

---

³ In childhood disability cases, the ALJ evaluates the child's functioning in six separate "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  If the ALJ finds "marked" limitations in at least two domains or an "extreme" limitation in one domain, the child is deemed to be disabled provided the child's impairment has lasted or is expected to last twelve months.  *See id.* §§ 416.909, 416.924(d)(1), 416.926a(d).  The Code defines a "marked" limitation as one where the child's impairments "interfere[] seriously with [the child's] ability to independently initiate, sustain, or complete activities."  *Id*. § 416.926a(e)(2).  The plaintiff contends that the ALJ erred across all six domains, Docket Item 12-1 at 2, but focuses her arguments on the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others, *id.* at 2, 20-28.

I. **STALE OPINION**

In determining that A.M.B. was not disabled, the ALJ relied on only one medical opinion—medical consultant Dr. Stouter's[4] February 2017 disability determination.[5] Docket Item 1-1 at 9-10.  The ALJ gave varying levels of weight to Dr. Stouter's opinion in each of the six childhood domains.  She gave "lesser weight" to Dr. Stouter's opinion in determining that A.M.B. had a less-than-marked limitation in acquiring and using information, "significant weight" in determining that A.M.B. had a less-than-marked limitation in attending and completing tasks, "significant weight" in determining that A.M.B. had no limitations in interacting and relating with others, moving about and manipulating objects, and caring for oneself, and "little weight" in determining that A.M.B. had no limitation in health and physical well-being.  *Id.* at 11-17.

Ashley argues that Dr. Stouter's opinion was stale by the time the ALJ rendered her decision.  This Court agrees.

Although "[a] stale medical opinion does not constitute substantial evidence to support an ALJ's findings," a "gap of time between when an opinion is rendered and the disability hearing and decision does not automatically invalidate that opinion." *Majdandzic v. Comm'r of Soc. Sec.*, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018).  For a medical opinion to be stale, not only must there be a significant period of time

---

[4] The ALJ does not mention Dr. Stouter by name in her decision but refers to Dr. Stouter's opinion as the "Disability Determination Service evaluation" and the "DDS opinion."  Docket Item 1-1 at 10-17.  Dr. Stouter did not examine A.M.B. but reviewed A.M.B.'s medical and school records and completed a disability evaluation.  Docket Item 10 at 81-85.

[5] The ALJ also had A.M.B.'s treatment notes from Towne Garden Pediatrics ("Towne Garden"), but those notes did not include any opinions from the various doctors at Towne Garden who treated A.M.B.  Docket Item 1-1 at 9; Docket Item 10 at 246-96.

between the date of the opinion and the hearing date, but there also must be subsequent treatment notes "indicat[ing that] a claimant's condition has deteriorated" over that period. *Whitehurst v. Berryhill*, 2018 WL 3868721, at *4 (W.D.N.Y. Aug. 14, 2018). In other words, the "mere passage of time does not render an opinion stale," *id.*, but "significant developments" in an individual's medical history after the examination might. *Davis v. Berryhill*, 2018 WL 1250019, at *3 (W.D.N.Y. Mar. 11, 2018).

Here, after Dr. Stouter's February 2017 evaluation, A.M.B. (i) started receiving special education services, Docket Item 10 at 209-11, (ii) was placed in an 8:1:1 classroom,[6] *id.* at 185, and (iii) doubled the Adderall prescribed to treat her ADHD, *compare id.* at 246 (medical record noting A.M.B.'s prescription for 5 milligrams of Adderall on December 28, 2016) *with id.* at 293 (medical record noting A.M.B.'s prescription for 10 milligrams of Adderall at an August 23, 2018 appointment). While each of these changes may seem slight in isolation, each circumstance that later changed was addressed—and apparently relied on—in Dr. Stouter's evaluation of A.M.B. And taken together, the changes may well have made a difference to Dr. Stouter and therefore should have prompted the ALJ at least to recontact Dr. Stouter for an update.

For example, Dr. Stouter twice referred to A.M.B.'s being in "regular kindergarten," *see id.* at 81-82, explicitly using that as the only explanation for finding "no limitation" in the domain of "acquiring and using information," *id.* at 81. But that

---

[6] An 8:1:1 classroom is a smaller setting that is comprised of eight students, one teacher, and one teacher's aide. Docket Item 10 at 185, 209.

apparently changed a short time later when A.M.B was placed in an 8:1:1 classroom. *Id.* at 185, 209.  Likewise, Dr. Stouter noted that A.M.B had been "determined ineligible," presumably for additional educational services, as part of the "[a]dditional [e]xplanation" for the doctor's conclusions.  *Id*. at 82.  But that apparently changed as well.  *See id.* at 209 (noting that A.M.B.'s tests are read to her), 210 (explaining that A.M.B. "receives extra support in all subject areas"), 217-22 (A.M.B.'s individualized education program progress report).  Moreover, Dr. Stouter explicitly referred to "the recency of [A.M.B.'s] diagnosis" as something "suggest[ing] that [A.M.B.'s] impairment [was] non-severe at [that] time," *id*. at 82, a finding that changed by definition when the diagnosis no longer was recent.  Those intervening developments rendered Dr. Stouter's medical opinion—the only one on which the ALJ relied—stale.

The Commissioner correctly notes that Dr. Stouter's opinion addressed both A.M.B.'s diagnosis of ADHD and the December 2016 Adderall prescription.  Docket Item 13-1 at 8.  But that misses the point.  As noted above, Dr. Stouter explicitly referred to "the recency of [A.M.B.'s] diagnosis" and her "varying degree of ADHD-like symptoms" as supporting the conclusion that A.M.B.'s impairment was non-severe.  Docket Item 10 at 82.  By the time of the ALJ's decision, that diagnosis certainly was less recent, and there was a longer period over which to observe the severity and impact of A.M.B.'s "ADHD-like symptoms."  What is more, A.M.B.'s condition apparently worsened over that time, as evidenced by her move from "regular kindergarten" to a program with more intense 8:1:1 supervision.  *Compare id.* ("[A.M.B.] is in regular kindergarten.") with *id.* at 185, 209 (noting that A.M.B. was placed in an 8:1:1 classroom

6

for both first and second grade).  Those changes may or may not have changed Dr. Stouter's opinion.  But it was incumbent on the ALJ to find out whether they did.

The Commissioner also argues that Dr. Stouter's opinion remained "fairly representative of A.M.B.'s condition" and that A.M.B.'s later records do not show deterioration.  Docket Item 13-1 at 8.  On the contrary, the Commissioner argues, the more recent records "actually showed A.M.B.'s condition improved with the introduction of medication and special education services, including 8:1[:1] class placement."  *Id.*  But that argument fails for two reasons.

First, whether or not A.M.B.'s condition improved is not the Commissioner's conclusion to reach.  The fact is that A.M.B. did not need special educational accommodations when Dr. Stouter reviewed A.M.B.'s records on February 2, 2017, but she did after that.  Likewise, when Dr. Stouter reviewed A.M.B.'s records, A.M.B. was taking half the dose of medication prescribed at the time of the ALJ's decision. *Compare* Docket Item 10 at 246 (medical record noting A.M.B.'s prescription for 5 milligrams of Adderall on December 28, 2016) *with id.* at 293 (medical record noting A.M.B.'s prescription for 10 milligrams of Adderall at an August 23, 2018 appointment).  So what the Commissioner cites as an improvement may be anything but.

Second, when a claimant is in a structured educational setting, the ALJ must evaluate the effect of that setting on the claimant.  20 C.F.R. § 416.924a(b)(5)(iv)(C).  Indeed, such a setting "may minimize signs and symptoms of [the claimant's] impairment(s)," and so the ALJ must "consider [the claimant's] need for a structured setting and the degree of limitation in functioning [he or she has] or would have outside the structured setting."  *Id.*  "Even if [the claimant is] able to function adequately in the

7

structured or supportive setting, [the ALJ] must consider how [the claimant] function[s] in other settings and whether [the claimant] would continue to function at an adequate level without the structured or supportive setting." *Id.*  So to the extent that the Commissioner argues that the changes do not show deterioration because A.M.B. improved as a result of structured intervention, that argument is misplaced.[7]

In sum, Dr. Stouter's opinion was indeed stale by the time of the ALJ's decision. When Dr. Stouter reviewed A.M.B.'s records, A.M.B. did not need special education accommodations; in fact, Dr. Stouter twice cited that as a reason for the opinion that A.M.B was not limited or that her limitations were less than marked.  When Dr. Stouter reviewed A.M.B.'s records, she was taking half the medication dose that she would take a short time later.  When Dr. Stouter reviewed A.M.B.'s records., her diagnosis was

---

[7] Indeed, the Commissioner's argument highlights another error in the ALJ's analysis—the failure to consider the effect of A.M.B.'s structured educational setting. The ALJ's decision is replete with references to A.M.B.'s improvement.  For example, in analyzing acquiring and using information, the ALJ concluded that "the specific observations of Ms. Mayer[, A.M.B.'s first grade teacher,] and Ms. Carlson[, A.M.B.'s second grade special education teacher]" suggest "that the claimant has somewhat improved and her problems within this domain have lessened over a year," and she noted that "[A.M.B.] did not repeat the first grade despite her academic struggles." Docket Item 1-1 at 11.  Although the ALJ acknowledged that A.M.B. required special education services and a smaller classroom, *id.*, she did not address the effect of such services.  Later, in evaluating attending and completing tasks, the ALJ again noted improvement and A.M.B.'s advancement to second grade: "Despite her struggles, the school did not retain [A.M.B.] between first and second grade.  She is taking special education which has helped improve her condition." *Id.* at 12.  But again, the ALJ did not address the effect of the special education on A.M.B.'s development or whether A.M.B. would continue to function at an adequate level without the structured setting.  In other words, the fact that A.M.B. progressed to second grade and improved in a special education classroom with accommodations sheds no light on how A.M.B. would do without those supports.  Therefore, the ALJ was obligated to do more: to compare A.M.B.'s performance to that of a child in a regular classroom and to determine how A.M.B would do in such a setting.  *See* 20 C.F.R. § 416.924a(b)(5)(iv)(C).  On remand, the ALJ should address the effect of A.M.B.'s structured educational setting on A.M.B.'s functioning.

recent, and Dr. Stouter relied on the recency of that diagnosis to conclude that A.M.B.'s "impairment is non-severe at this time." Docket Item 10 at 82. At the very least, Dr. Stouter should have been given a chance to update his opinion when the ALJ issued her decision years later and after those things had changed.

It may well be that A.M.B. is not disabled and that Dr. Stouter's opinion will not change despite A.M.B.'s recent school accommodations and the increase in her medication. But there is no way to know that without asking Dr. Stouter. On remand, the ALJ should do just that or otherwise obtain recent opinions sufficient to justify her conclusions.

## **CONCLUSION**

This Court therefore remands the matter for reconsideration of whether A.M.B. has an extreme limitation in one domain or a marked limitation in two or more domains. The Court "will not reach the remaining issues . . . because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").

The Commissioner's motion for judgment on the pleadings, Docket Item 13, is DENIED, and Ashley's motion for judgment on the pleadings, Docket Item 12, is GRANTED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:     November 8, 2021
           Buffalo, New York

                                                  */s/ Lawrence J. Vilardo*
                                                LAWRENCE J. VILARDO
                                                UNITED STATES DISTRICT JUDGE